IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02027-REB-CBS

JAHAD ALI # 56036,
    Plaintiff,
v.

MICHELE WINGERT, and
BERNADETTE SCOTT,
    Defendants.
_____

RECOMMENDATION AND ORDER OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

    This civil action comes before the court on: (1) Mr. Ali's "Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56," (2) Defendants' "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(6)," and (3) Mr. Ali's "Motion for Appointment of Counsel Pursuant to Directives of the new Federal Pro Bono Project." Pursuant to the Order Referring Case dated March 6, 2013 (Doc. # 18) and the memoranda dated April 29, 2013 (Doc. # 28), May 7, 2013 (Doc. # 30), and November 11, 2013 (Doc. # 46), these matters were referred to the Magistrate Judge. The court has reviewed the Motions, Defendants' Response (filed May 23, 2013) (Doc. # 39), Mr. Ali's "Reply" ("Response") (filed June 17, 2013 ) (Doc. # 43), Defendants' Reply (filed July 1, 2013) (Doc. # 44), the Amended Prisoner Complaint ("AC") (Doc. # 15), the entire case file, the proceedings held on May 13, 2013 (*see* Courtroom Minutes/Minute Order (Doc. # 35)), and the applicable law and is sufficiently advised in the premises.

I.    Statement of the Case

    The events forming the basis for this civil action occurred at the Sterling Correctional Facility ("SCF") of the Colorado Department of Corrections ("CDOC"), in Sterling, Colorado. Mr. Ali, formerly known as Tracy Spencer, was previously incarcerated at SCF and is currently incarcerated at the Fremont Correctional Facility ("FCF") in Cañon City, Colorado. (*See* AC (Doc. # 15); Doc. # 44 Certificate of Service). He is proceeding in this case in his

*pro se* capacity. At the direction of the court, Mr. Ali filed his AC on December 21, 2012. (*See* "Order Directing Plaintiff to File Amended Complaint" (Doc. # 6); Doc. # 15). In his AC, Mr. Ali alleges three claims pursuant to Title 42 U.S.C. § 1983 against Defendants Wingert and Scott, prison mail room supervisors, for failing to process his mail unless he uses both his religious name, Jahad Ali, and his committed name, Tracy Spencer.[1]

Mr. Ali and the Colorado Department of Corrections ("CDOC") entered into a Settlement Agreement in 1992 in *Makin v. DOC*, Civil Action No. 92-N-55, concerning the use of his religious name. (*See* Doc. # 15 at 4 of 15; Exhibit C to Mr. Ali's Motion for Summary Judgment (Doc. # 27 at 19-25 of 27)). The Agreement does not address mail specifically; rather, it provides that "Plaintiffs may use both their committed name and religious name on DOC IDs and state issued clothing" and that "[a]ll DOC records and official documents will be maintained in the committed name and DOC registration number and the religious name will be reflected as an alias or A/K/A." (*See* Doc. # 27 at 20 of 27). This agreement also applies to Mr. Ali's mail. (*See* Affidavit of Bernadette Scott, Exhibit A-1 to Defendants' Response (Doc. # 39-1 at ¶ 10); Affidavit of Michele Wingert, Exhibit A-2 to Defendants' Response (Doc. # 39-2 at ¶ 10)).

The CDOC's current Administrative Regulations require offenders to use their commitment names as set forth in their criminal sentences (mittimuses) on all items of mail, as well as other CDOC documents. (*See* Exhibits A-1, A-2 to Defendants' Response (Doc. # 39-1 at ¶ 7; Doc. # 39-2 at ¶ 7); Administrative Regulation ("AR") 300-38 IV. C.1. (Doc. # 39-4 at 6 of 16); AR 950-06 III., IV. (Doc. # 39-3 at 1 of 5)). The ARs apply even if offenders legally change their name. (*See* Doc. # 39-1 at ¶ 8; Doc. # 39-2 at ¶ 8). In that event, the offender's new legal name is recorded as an A/K/A. (*See id.*). Defendant Scott became the Mailroom Supervisor at SCF in February of 2010, where she supervises the mailroom. (*See* Doc. # 39-1 at ¶ 4). Defendant Wingert was formerly an Administrative Captain at SCF, who supervised Defendant Scott, among other responsibilities. (*See* Affidavit of Michele Wingert,

---

[1] Defendants Clements, Faulk, Usry, and Mailroom Staff Iris Christians were dismissed from this lawsuit on March 6, 2013. (*See* "Order to Dismiss in Part and to Draw Case to District Judge and to Magistrate Judge" (Doc. # 16)).

Exhibit A-2 to Defendants' Response (Doc. # 39-2 at ¶ 4)). Defendant Wingert was in this position from September of 2010 to November of 2012, when she was promoted to a new position. (*See* Doc. # 39-2 at ¶ 3).

Mr. Ali alleges that in 2009 "he began experiencing intermittent problems with sending and receiving mail under Jahad Ali." (*See* Doc. # 15 at 4 of 15). He alleges that

> [t]his policy has continued to the present, and it has resulted in the Plaintiff being unable to send his discovery motions to the Logan County District Court. Because his legal mail was denied, Mr. Ali was hampered in litigating his State court complaint, and he ultimately lost the case on Summary Judgment. He is currently on appeal – but he would have been able to more effectively fight against Summary Judgment had he been able to send out his legal papers to the Logan County District Court. At the very least, he would have had his important discovery issues heard by the State court.

(*See* Doc. # 15 at 5 of 15; *see also* Doc. # 15-1 at 1-11 of 11; Doc. # 27 at 6-17 of 27)). He claims that Defendants are violating his constitutional rights to access the courts and to free exercise of his religion, and retaliating against him in violation of his First and Fourteenth Amendment rights. (*See* Doc. # 15 at 6-9 of 15). Mr. Ali seeks injunctive relief, punitive damages, compensatory damages, costs, and fees. (*See id.* at 11 of 15).

II.   Standard of Review

Defendants move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the AC. Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." The court's function on a Rule 12(b)(6) motion

> is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's Complaint alone is legally sufficient to state a claim for which relief may be granted. In doing so, the Court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff. . . The plausibility standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible. However, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief. Thus, even though modern rules of pleading are somewhat forgiving, a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.

*Hull v. Colorado Bd. of Governors of Colorado State University*, 805 F. Supp. 2d 1094, 1102 (D. Colo. 2011) (internal quotation marks and citations omitted).

Mr. Ali moves for summary judgment pursuant to Fed. R. Civ. P. 56.

> Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. A dispute is "genuine" if the issue could be resolved in favor of either party. A fact is "material" if it might reasonably affect the outcome of the case.
> A movant who does not have the burden of proof at trial must show the absence of a genuine fact issue. By contrast, a movant who bears the burden of proof must submit evidence to establish every essential element of its claim or affirmative defense. In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. All the evidence must be viewed in the light most favorable to the party opposing the motion. However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence.

*Wausau Business Ins. Co. v. U.S. Motels Management, Inc.*, 341 F. Supp. 2d 1180, 1182-83 (D. Colo. 2004) (citations omitted).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). *See also Firstenberg v. City of Santa Fe, N.M.*, 696 F.3d 1018, 1024 (10th Cir. 2012) (court must "read pro se complaints more liberally than those composed by lawyers") (internal quotation marks and citation omitted). "The *Haines* rule applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings." *Id.*, at n. 3 (citations omitted). However, the court cannot be a pro se litigant's advocate. *Yang v. Archuleta*, 525 F. 3d 925, 927 n. 1 (10th Cir. 2008). "[T]he generous construction" that is afforded pro se pleadings has limits, and the court "must avoid becoming the plaintiff's advocate." *Firstenberg*, 696 F.3d at 1024.

As the AC has been sworn to under penalty of perjury (*see* Doc. # 11 at 38 of 39), the court may treat it as an affidavit. *Green v. Branson*, 108 F.3d 1296, 1301 n. 1 (10th Cir. 1997). Where the court treats a verified complaint as an affidavit, whether a party's affidavit in opposition to summary judgment is "sufficient to create a genuine issue of material fact must be evaluated in light of the principle that conclusory allegations without specific supporting facts have no probative value." *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (internal quotation marks and citation omitted). *See also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) ("[A] verified complaint may be treated as an affidavit for

purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e).") (internal quotation marks and citation omitted). "[T]here may be cases where the sole reliance on a verified complaint would be insufficient to meet a nonmoving party's burden . . . , especially when the allegations contained in the pleading are merely conclusory." *Conaway v. Smith*, 853 F.2d 789, 792-93 (10th Cir. 1988).

III.   Analysis

Section 1983 creates a cause of action where a "person . . . under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution." Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979). To establish a claim under § 1983, a plaintiff must prove he was deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

A.   Official Capacity Liability

Mr. Ali sues Defendants in both their official and individual capacities. (*See* Doc. # 15 at 1 of 15). To the extent that he is suing Defendants in their official capacities, Mr. Ali is actually attempting to impose liability on their employer, the CDOC. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (suit against a state official in his or her official capacity is treated as a suit against the state). The Eleventh Amendment provides for the sovereign immunity of a state or state actors sued in federal court. *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1187 (10th Cir. 1998), *overruled on other grounds by Hill v. Kemp*, 478 F.3d 1236, 1259 (10th Cir. 2007). "[W]hen a suit seeks money damages against an official of a state agency, suing that official in his or her official capacity, then the real party in interest is the state, and the suit is barred

by the Eleventh Amendment." *Id.* (internal quotation marks and citation omitted). The Eleventh Amendment confers total immunity from suit, not merely a defense to liability. *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993) (citation omitted). To the extent that Mr. Ali is suing Defendants, who are state employees, in their official capacities for money damages, such claim is properly dismissed as barred by the Eleventh Amendment.

The Eleventh Amendment does not always bar actions in federal court seeking injunctive relief against state officials. *Kentucky v. Graham*, 473 U.S. 159, 164 (1985). *See also Ex parte Young*, 209 U.S. 123, 159-60 (1908) (holding that the Eleventh Amendment generally does not bar official-capacity claims seeking prospective injunctive relief from a state official); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n. 10 (1989) (official-capacity actions for prospective injunctive relief are not treated as actions against the State) (internal quotation marks and citation omitted). Nor does the Eleventh Amendment bar actions for damages against state officials in their individual capacities. To the extent that Mr. Ali is suing Defendants in their individual capacities, personal capacity suits seek to impose personal liability upon a government official for actions he or she takes. *Graham*, 473 U.S. at 165-67. The court proceeds to evaluate whether Mr. Ali states any claim against Defendants in their individual capacities or for injunctive relief in their official capacities.

B.   Individual Capacity Liability

　1.   Denial of Access to Logan County District Court

Prison inmates have a constitutional right to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 823 (1977), *overruled in part on other grounds by Lewis v. Casey*, 518 U.S. 343, 354 (1996). "The right of access to the courts . . . assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights." *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). An allegation of denial of access to the courts is viewed as an aspect of the freedom of petition clause of the First

Amendment, *Harrison v. Springdale Water and Sewer Comm'n*, 780 F.2d 1422, 1427 n. 7 (8th Cir. 1986), as guaranteed by the Fourteenth Amendment. *See Bounds v. Smith*, 430 U.S. at 822 (Due Process Clause of the Fourteenth Amendment guarantees state inmates the right to "adequate, effective, and meaningful" access to the courts). *See also Green v. Johnson*, 977 F.2d 1383, 1389 (10th Cir. 1992) ("The constitutional right of access to the courts is guaranteed by the Due Process Clause[ ] of the . . . Fourteenth Amendment[ ]."); *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) ("the right of access is founded on the due process clause and guarantees the right to present to a court of law allegations concerning the violation of constitutional rights."); *Nordgren v. Milliken*, 762 F.2d 851, 853 (10th Cir. 1985) (prisoner's constitutional right of access to the courts is accorded by article 4 of the Constitution and the Fourteenth Amendment, as well as by the First Amendment right to petition). "Any deliberate impediment to access [to the courts], even a delay of access, may constitute a constitutional deprivation." *Green*, 977 F.2d at 1389 (internal quotation marks and citation omitted).

To state a violation of his right of access to the courts, Mr. Ali must plead that he was actually impeded in his ability to conduct a particular case. *See Lewis v. Casey*, 518 U.S. at 348-55 (To plead a violation of this right, a plaintiff must allege that the state's interference led to an "actual injury" by "frustrat[ing]," "imped[ing]," or "hinder[ing] his efforts to pursue a legal claim."). In order to satisfy the actual injury requirement, the plaintiff must show that he was impeded in his ability to file non-frivolous direct appeals from his conviction, a habeas corpus petition or a civil rights claim pursuant to § 1983 "to vindicate basic constitutional rights." *Id.*, at 354-55 ("[P]risoners have a right to access to the courts only in relation to direct appeals from the convictions for which they were incarcerated, habeas petitions, or civil rights actions challenging the conditions of their confinement.") (internal quotation marks and citation omitted). *See also Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) ("To present a viable claim for denial of access to courts, however, an inmate must allege and prove prejudice arising from Defendants' actions."); *Smith v. Maschner*, 899 F.2d at 944 (an inmate alleging interference with legal access must allege specific facts showing that a

"distinct and palpable" injury resulted from defendants' conduct.).

Mr. Ali does not adequately plead or demonstrate an actual injury that resulted from Defendants' conduct. The lawsuit he brought in Logan County District Court alleged a breach of contract claim under state law, seeking enforcement of the 1992 Settlement Agreement. (*See* Complaint filed in Logan County District Court (Doc. # 15-1)).[2] A state law breach of contract claim does not meet the requirement to show that a plaintiff was impeded in his ability to file non-frivolous direct appeals from his conviction, a habeas corpus petition or a civil rights claim pursuant to § 1983 "to vindicate basic constitutional rights." *Lewis v. Casey*, 518 U.S. at 354-55.

Further, the Settlement Agreement Mr. Ali sought to enforce does not include a provision requiring prison staff to allow him to use his religious name only. To the contrary, the Settlement Agreement provides that Mr. Ali will be permitted to use his religious name as an A/K/A along with his committed name. (*See* Doc. # 27 at 20 of 27). Mr. Ali's claim to the contrary does not met the actual injury requirement. "The right of access to the courts is neither absolute nor unconditional, and there is no constitutional right of access to the courts to prosecute an action that is frivolous or malicious." *Schlicher v. Thomas*, 111 F.3d 777, 781 (10th Cir. 1997) (internal quotations omitted).

Nor did Defendants' enforcement of CDOC Administrative Regulations deprive Mr. Ali of access to the Logan County District Court. He was merely required to use his commitment name as well as his religious name on his mail. Had Mr. Ali simply complied with the regulations, there would have been no impediment to sending mail to and from the Logan County District Court. (*See* Doc. # 15 at 7 of 15 ("For the next two months [Defendants] . . . periodically met with [Mr. Ali] to get him to write his committed name on the envelopes. . . but the Plaintiff refused to write Tracy Spencer on his legal mail.")).

Mr. Ali alleges that he was "unable to send his discovery motions to the Logan County District Court." (*See* Doc. # 15 at 5 of 15; *see also* 7 of 15 (in May of 2012, "the Plaintiff

---

[2]   "[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

attempted to send out some discovery motions to the Attorney General and the Logan County District Court.")). His allegations do not indicate that he missed any deadlines or that summary judgment was entered due to Defendants' actions. While Mr. Ali alleges that in 2009 he began experiencing problems with sending and receiving mail, he submitted numerous filings to the Logan County District Court between September 2, 2010 and June 21, 2013. (*See Ali v. Milyard*, Logan County District Court Case No. 2010CV121 docket sheet, attached to this Recommendation).[3] The court granted summary judgment on the merits, finding "that there are no disputed facts regarding the underlying claim of breach of contract. The Defendant has established that it is not in breach of the original settlement agreement." (*See id.*, docket entry dated January 31, 2012). Mr. Ali alleges that "he would have been able to more effectively fight against Summary Judgment had he been able to send out his legal papers to the Logan County District Court." (*See* Doc. # 15 at 5 of 15). "At the very least, he would have had his important discovery issues heard by the State court." (*See id.*). However, "the right of access to the courts does not encompass the right to litigate as effectively as [Mr. Ali] would like once in court." *Jones v. Hendricks*, No. 04-1658, 173 F. App'x 180, 183 93d Cir. Apr. 4, 2006) (citation omitted).[4]

In sum, Mr. Ali does not sufficiently allege or show that Defendants' actions hindered his ability to access the Logan County District Court or caused the result in his breach of contract case. Mr. Ali's claim for denial of access to the courts is properly dismissed for failure to state a claim to which relief can be granted.

2.  Free Exercise of Religious Beliefs

Mr. Ali alleges that since 2009, Defendants have required him to use both his religious name and his committed name on his mail. (*See* Doc. # 15 at 7 of 15 ("Captain Wingert told

---

[3] In considering a Rule 12(b)(6) motion, a court must primarily consider the allegations contained in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[4] Copies of unpublished cases cited are attached to this Recommendation.

the Plaintiff that for any of his mail to go out it had to have both his legal/religious name (Jahad Ali) and his AKA/committed name (Tracy Spencer) on it.")).  He alleges that this "violates his right to freely exercise his religious beliefs." (*See* Doc. # 15 at 8 of 15).  Mr. Ali does not allege that he is prohibited from using his religious name or that items of his mail are rejected solely because they contain his religious name.  Numerous courts have affirmed prison policies that require the use of both an inmate's religious name and his commitment name on inmate mail, Mr. Ali fails to state a claim to which relief can be granted.  *See, e.g., Hakim v. Hicks*, 223 F.3d 1244 (11th Cir. 2000) (Department of Corrections' compliance with a dual-name policy would resolve free exercise claim (citing *Mujihadeen v. Compton*, 627 F. Supp. 356 (W.D. Tenn.1985) (prison policy requiring both committed and Muslim name to appear on inmate I.D. card did not violate inmate's Free Exercise Clause rights));  *Fawaad v. Jones*, 81 F.3d 1084, 1085-1087 (11th Cir. 1996) (prison policy which required Islamic inmate who had legally changed his name while in prison to use both his legal name and name under which he was committed on all incoming and outgoing mail did not violate inmate's right to freely practice his religion under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1);  *Malik v. Brown*, 16 F.3d 330, 334 (9th Cir. 1994) ("Using both the religious and the committed name is a satisfactory alternative means for an inmate to freely exercise his religion");  *Salaam v. Lockhart*, 905 F.2d 1168, 1174-1175 (8th Cir. 1990) ("The a/k/a designation has been recognized by several federal courts as a reasonable alternative to prisons' committed name policies.");  *Felix v. Rolan*, 833 F.2d 517, 519 (5th Cir. 1987) (holding First Amendment not violated in situation in which "prison has not refused to recognize [inmate]'s new name, it merely requires that for administrative efficiency he include his former name as an identifying alias");  *Ephraim v. Angelone*, 313 F. Supp 2d 569, 575 (E.D. Va. 2003) ("When an inmate legally changes his name for religious purposes, the Department of Corrections, upon notice of such a change, is required to add the new name to the prison file.  However, the Department of Corrections is not required to replace the inmate's old name with the new one.") (citations omitted); *Thacker v. Dixon*, 784 F. Supp. 286, 304 (E.D.N.C. 1991) (plaintiff can use his legal name; however, he must provide his

committed name to insure that his records are kept in their proper order); *Riggins v. Clarke*, 403 Fed. Appx. 292, 294 (9th Cir. 2010) (State corrections officials' enforcement of policy requiring that all prisoners use name under which they were committed to custody before any other official or religious name on all incoming and outgoing correspondence did not violate prisoner's First Amendment rights); *Malik v. Clarke*, No. C07-5160 RJB/KLS, 2009 WL 990874 at * 8 (W.D. Wash. Apr. 13, 2009) (DOC has legitimate penological interests in requiring Plaintiff to use his committed name first on his incoming mail). As a matter of law, Mr. Ali's allegations that Defendants violated his constitutional rights by requiring the use of both his religious name and his commitment name on his inmate mail fails to state a claim to which relief can be granted.

3.   Retaliation

Mr. Ali alleges that Defendants refused to process mail without both his religious and commitment names as retaliation for his exercise of his constitutionally protected right to file his lawsuit in the Logan County District Court. (*See* Doc. # 15 at 9 of 15). "[O]fficials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights . . . even where the action taken in retaliation would be otherwise permissible." *Peterson v. Shanks*, 149 F.3d at 1144 (internal quotation marks and citation omitted). *See also Hartman v. Moore*, 547 U.S. 250, 256 (2006) (noting that "the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, . . .").

"[I]n order to establish a First Amendment retaliation claim, a prisoner must demonstrate that he was (1) engaged in protected conduct; (2) that he suffered an adverse action; and (3) that a causal connection exists between the protected conduct and the adverse action." *Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004) (citation omitted). *See also Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003) ("To state a valid claim for retaliation under § 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory

adverse act, and (4) causation."). "An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson*, 149 F.3d at 1144 (internal quotation marks and citation omitted) (emphasis in original). "[A] plaintiff must prove that but for the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." *Id.* (internal quotation marks and citation omitted).

Mr. Ali's claim fails first because he does not adequately plead or demonstrate Defendants' intent to retaliate against him for filing a lawsuit in Logan County District Court. He fails to allege any specific dates, a chronology of events, or specific facts pointing to Defendants' intent to retaliate against him. While he alleges that he "was informed shortly after" the Logan County District Court denied the defendants' motion to dismiss on June 22, 2011 "by Captain Wingert and [L]ieutenant Scott that my mail would no longer leave or be received at SCF under the plaintiff's legal name of Jahad Ali," his own allegations indicate that enforcement of the regulations to which Mr. Ali objects began long before he filed the lawsuit in Logan County or the court denied defendants' motion to dismiss. (*See* Doc. # 27 at 4 of 27;  Doc. # 15 at 4, 6, 8, 9 of 15).  Mr. Ali alleges nothing more than his conclusion that if not for an impermissible retaliatory motive, Defendants would not have required him to use both his religious and committed names on his mail.  Mr. Ali cannot state or establish a claim for retaliation with mere conclusory allegations.  *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) ("[T]he court may insist that the plaintiff put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury in order to survive a prediscovery motion for dismissal . . . .") (internal quotation marks and citation omitted); *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir.1990) ("Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.");  *Strope v. Cummings*, No. 09-3306, 381 F. App'x 878, 883 (10th Cir. June 9, 2010) (plaintiff's "attribution of retaliatory motive" that was "conjectural and conclusory" did not support a claim of retaliation).  Even when viewed in a light most favorable to Mr. Ali, his generalizations do not state a claim for

retaliation.

Mr. Ali's claim also fails because he does not adequately allege or establish that the filing of his lawsuit in Logan County District Court was the "but for" cause for Defendants' treatment of his mail. Defendants were acting in accordance with CDOC regulations regarding the treatment of his mail. CDOC regulations require that inmate mail contain an inmate's commitment name, and that legal name changes, including those for religious reasons, only be recorded as A/K/A names. Mr. Ali does not allege or establish that Defendants had any control over these CDOC regulations or that these policies are targeted at him specifically. (*See* Doc. # 39-1 at ¶ 13; Doc. # 39-2 at ¶ 13). Mr. Ali does not specifically allege or demonstrate that Defendants were aware of the lawsuit he filed in the Logan County District Court. Mr. Ali's own allegation that he refused to use both his religious and commitment names, contrary to CDOC regulations, provides grounds that Defendants would have taken the same action even in the absence of any protected activity. *See Hashim v. Litscher*, No. 01-C-266-C, 2001 WL 34379618, at * 7 (W.D. Wis. July 27, 2001) (prisoner who alleged he was using names not recognized by the prison, contrary to prison procedures, failed to suggest retaliation). Mr. Ali fails to allege any specific facts or provide any evidence that but for a retaliatory motive, Defendants would not have enforced the mail regulations regarding use of both his religious and commitment names. He thus fails to state a claim to which relief may be granted for retaliation.

    4.    Qualified Immunity.

Defendants raise the defense of qualified immunity to Mr. Ali's claims against them in their individual capacities. Whether a defendant is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation

marks and citations omitted).  "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id*.  "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry.  *Id*.

Once a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to show that (1) the defendant violated a constitutional or statutory right and (2) the constitutional or statutory right was clearly established when the alleged violation occurred. *Verdecia v. Adams*, 327 F.3d 1171, 1174 (10th Cir. 2003).  As the court concludes that Mr. Ali fails to state or demonstrate any constitutional violation, Defendants in their individual capacities are entitled to qualified immunity.  *See Wilder*, 490 F.3d at 815 (instructing district court on remand to enter judgment in favor of defendant on basis of qualified immunity, where plaintiff failed to carry his burden to show violation of a constitutional right).[5]

C.     Motion for Appointment of Counsel

Mr. Ali moves "for appointment of counsel pursuant to the directives of the ne federal Pro Bono Project."  (*See* Doc. # 45).  He was granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 on August 7, 2012.  (*See* Doc. # 4).  Indigent civil litigants have no constitutional or statutory right to be represented by a lawyer.  *Merritt v. Faulkner*, 697 F.2d 761, 763 (7th Cir. 1983).  Pursuant to 28 U.S.C. § 1915(e)(1), the court "may request an attorney to represent any person unable to afford counsel."  *See also Johnson v. Howard*, 20 F. Supp. 2d 1128, 1129 (W.D. Mich. 1998) (a court may request counsel to represent an indigent plaintiff in an "exceptional case").  However, § 1915(e)(1) does not authorize "compulsory assignments of attorneys" or "coercive appointments of counsel."  *Mallard v. United States District Court for the Southern Dist. of Iowa*, 490 U.S. 296, 300-310 (1989).

Whether to request counsel is left to the sound discretion of the trial court.  *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995).  "[T]he district court has broad discretion to

---

[5] Based on the court's conclusions in this Recommendation, it does not reach at this time Defendants' additional arguments for dismissal, *i.e.,* the statute of limitations and the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e).

appoint counsel for indigents . . . , and its denial of counsel will not be overturned unless it would result in fundamental unfairness impinging on due process rights." *Long v. Shillinger*, 927 F.2d 525, 527 (10th Cir. 1991) (applying 28 U.S.C. § 1915(d), amended and renumbered as § 1915(e)(1)) (internal quotation marks and citation omitted).  In deciding whether to request counsel for an indigent civil litigant, the district court should evaluate "the merits of a [litigant's] claims, the nature and complexity of the factual issues, and the [litigant's] ability to investigate the facts and present his claims." *Hill v. Smithkline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004) (citations omitted).  *See also* Part III.C. of the U.S. District Court's Pilot Program to Implement A Civil Pro Bono Panel, www.cod.uscourts.gov/Court Operations/RulesProcedures/PilotProjects.aspx (factors and considerations include: 1) the nature and complexity of the action; 2) the potential merit of the pro se party's claims; and 3) the degree to which the interests of justice will be served by appointment of counsel, including the benefit the court may derive from the assistance of the appointed counsel). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel."  *Hill*, 393 F.3d at 1115 (citation omitted).  "Only in those extreme cases where the lack of counsel results in fundamental unfairness will the district court's decision be overturned." *Hill*, 393 F.3d at 1115 (citation omitted).

The court has considered Mr. Ali's request for appointed counsel and the appropriate factors.  In light of the Recommendation, *infra*, that Defendants' Motion to Dismiss be granted and Mr. Ali's Motion for Summary Judgment be denied, at this stage of the litigation it is not clear that the merits of Mr. Ali's claims are sufficient for the court to request counsel to volunteer to represent him.

Accordingly, IT IS RECOMMENDED that:

1.      Defendants' "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(6)" (filed May 6, 2013) (Doc. # 29) be GRANTED and this civil action be dismissed without prejudice as against Defendants in their official capacities for lack of subject matter jurisdiction and be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim to which relief can

be granted as against Defendants in their individual capacities.[6]

    2.    Mr. Ali's "Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56" (filed April 25, 2013) (Doc. # 27) be DENIED.

Further, IT IS ORDERED that Mr. Ali's "Motion for Appointment of Counsel Pursuant to Directives of the new Federal Pro Bono Project" (filed October 30, 2013) (Doc. # 45) is DENIED at this time.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195

---

[6] Defendants' assertion of Eleventh Amendment immunity constitutes a challenge to the allegations of subject matter jurisdiction in the AC. *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) ("an assertion of Eleventh Amendment immunity concerns the subject matter jurisdiction of the district court"); *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 559 (10th Cir. 2000) ("Once effectively asserted [Eleventh Amendment] immunity constitutes a bar to the exercise of federal subject matter jurisdiction.") (original emphasis omitted)). "Generally, a dismissal for lack of subject matter jurisdiction is without prejudice and does not have a preclusive effect." *Garman v. Campbell County Sch. Dist. No. 1*, 630 F.3d 977, 985 (10th Cir. 2010). *See also Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("[W]here the district court dismisses an action for lack of jurisdiction . . . the dismissal must be without prejudice.").

F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 19th day of November, 2013.

BY THE COURT:

 s/ Craig B. Shaffer
United States Magistrate Judge